PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEVADA, A PUBLIC AGENCY, APPELLANT, *v.* RENO NEWSPAPERS, INC., RESPONDENT.

No. 60129

November 14, 2013                                        313 P.3d 221

*Catherine Cortez Masto*, Attorney General, and *Kimberly Okezie*, Deputy Attorney General, Carson City; *Woodburn & Wedge* and *W. Chris Wicker* and *Joshua M. Woodbury*, Reno, for Appellant.

*Burton Bartlett & Glogovac, Ltd.*, and *Scott A. Glogovac* and *David S. McElroy*, Reno, for Respondent.

*Brownstein Hyatt Farber Schreck, LLP*, and *Adam P. Segal* and *Bryce C. Loveland*, Las Vegas, for Amicus Curiae Clark County Association of School Administrators.

*Smith Law Firm* and *James C. Smith*, Reno, for Amicus Curiae Retired Public Employees of Nevada.

Before the Court EN BANC.

# OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we discuss the applicability of Nevada's Public Records Act (the Act) to information stored in the individual files

of retired employees that are maintained by appellant Public Employees' Retirement System of Nevada (PERS). Specifically, we address the scope of confidentiality set forth in NRS 286.110(3), which states that "[t]he official correspondence and records, *other than the files of individual members or retired employees*, . . . are public records and are available for public inspection." (Emphasis added.)

Although we conclude that the individual files have been declared confidential by statute and are thereby exempt from requests pursuant to the Act, other reports that PERS generates based on information contained in the files are not similarly protected by NRS 286.110(3). However, information contained in such other reports may still be declared confidential, privileged, or protected by other statutes, rules, or caselaw, and therefore not subject to disclosure under the Act. Accordingly, we affirm in part and vacate in part the district court's order.

## FACTS AND PROCEDURAL HISTORY

In 2011, respondent Reno Newspapers, Inc., doing business as the Reno Gazette-Journal (RGJ), submitted a public records request to PERS seeking the following pension information: the names of all individuals who are collecting pensions, the names of their government employers, their salaries, their hire and retirement dates, and the amounts of their pension payments. RGJ's request originated as part of an investigation concerning government expenditures and the public cost of retired government employee pensions. PERS denied RGJ's request, asserting that the information was confidential pursuant to NRS 286.110(3), which states that the files of individual retired employees are not public records, and NRS 286.117, which requires a personal waiver from the member to review and copy such records.

RGJ filed a petition for a writ of mandamus in district court seeking the requested information, which it asserted is not confidential because it is generated from public records and easily accessible through an electronic search of the PERS system. PERS opposed the petition, arguing that it strictly maintains the requested information as confidential and that the privacy interests involved outweigh the public's interest in disclosure.[1] For support, PERS submitted a declaration from its executive officer explaining that all information related to the individual files is maintained as

---

[1]Clark County Association of School Administrators (CCASA) filed a motion to intervene and a proposed opposition to RGJ's writ petition, and Retired Public Employees of Nevada (RPEN) filed a motion for leave to file an amicus brief in support of PERS, both arguing that production of the requested information would subject retired employees to the risk of identity theft and elder abuse. These organizations have also filed amicus curiae briefs on appeal.

confidential but that PERS provides an annual valuation of its system in aggregate form as a public record.

The district court granted RGJ's petition, concluding that neither NRS 286.110(3) nor NRS 286.117 declared the requested information confidential and that privacy concerns did not clearly outweigh the public's right to disclosure. The district court ordered PERS to produce a report for RGJ containing the requested information, subject to appropriate fees under NRS 239.052 and so long as the home addresses and social security numbers of the retired public employees remained confidential.[2] PERS now brings this appeal.

## DISCUSSION

PERS argues on appeal that the district court erred in granting RGJ's petition because the Legislature, by enacting NRS 286.110(3), has explicitly declared that information contained in the individual files of retired employees is confidential. Alternatively, PERS argues that the privacy interests in nondisclosure clearly outweigh the public's interest in accessing that information.

### Standard of review

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station[,] or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (footnote omitted); *see* NRS 34.160. This court reviews a district court's decision to grant or deny a petition for a writ of mandamus under an abuse of discretion standard. *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003). Questions of statutory construction, however, including the meaning and scope of a statute, are questions of law, which this court reviews de novo. *Id.*

### Application of Nevada's Public Records Act

At the outset, the Act establishes that "all public books and public records of governmental entities must remain open to the public, unless 'otherwise declared by law to be confidential.'" *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 877, 266 P.3d 623, 626 (2011) (quoting NRS 239.010(1)). The Act's purpose is to promote government transparency and accountability by facilitating

---

[2]The district court also carved out an exception prohibiting the disclosure of the names of retired employees in sensitive law enforcement positions where public access to those names could jeopardize their personal safety.

public access to information regarding government activities. *Id.* "Generally, when 'the language of a statute is plain and unambiguous, . . . the courts are not permitted to search for its meaning beyond the statute itself.'" *Chanos v. Nev. Tax Comm'n,* 124 Nev. 232, 240, 181 P.3d 675, 680 (2008) (quoting *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.,* 116 Nev. 290, 293, 995 P.2d 482, 485 (2000)). Moreover, in order to advance the Act's public access goal, the Act's "provisions must be liberally construed to maximize the public's right of access," and "any limitations or restrictions on [that] access must be narrowly construed." *Gibbons,* 127 Nev. at 878, 266 P.3d at 626 (citing NRS 239.001(2)-(3)). Accordingly, this court begins its analysis of claims of confidentiality under the Act with a presumption in favor of disclosure. *Id.* at 880, 266 P.3d at 628. The state entity bears the burden of overcoming this presumption of openness by proving by a preponderance of the evidence that the requested records are confidential. *Id.* The state entity may either show that a statutory provision declares the record confidential, or, in the absence of such a provision, "that its interest in nondisclosure clearly outweighs the public's interest in access." *Id.* Within this context, we now address the district court's order granting RGJ's petition for access to the requested information.

*The Legislature has declared the files of individual members confidential*

As noted, pursuant to NRS 239.010(1), all public books and public records of government entities must remain open to the public unless "otherwise declared by law to be confidential." Applicable here, the Legislature has declared the following limitation with regard to what PERS information constitutes a public record:

> The official correspondence and records, *other than the files of individual members or retired employees,* and, except as otherwise provided in NRS 241.035, the minutes, audio recordings, transcripts and books of the System are public records and are available for public inspection.

NRS 286.110(3) (emphasis added). This exception to disclosure must be construed narrowly. NRS 239.001(3).

On appeal, PERS argues that all information contained in an individual's file is protected by NRS 286.110(3)'s scope of confidentiality and that disclosure of such information is only proper following waiver by the retired employee pursuant to NRS 286.117. RGJ responds that PERS's construction is overly broad and would include information that merely relates to a retired employee's file, regardless of the information's origin, such as other-

wise nonconfidential information derived from third-party payroll records relating to individuals.

PERS's position exceeds the plain meaning of NRS 286.110(3)'s restrictions, which must be narrowly construed to protect only individuals' files. NRS 239.001(3). In concluding that only individuals' files have been declared confidential as a matter of law, we specify that NRS 286.110(3)'s scope of confidentiality does not extend to all information by virtue of it being contained in individuals' files. Where information is contained in a medium separate from individuals' files, including administrative reports generated from data contained in individuals' files, information in such reports or other media is not confidential merely because the same information is also contained in individuals' files.[3] Rather, it is the individuals' files themselves that are confidential pursuant to NRS 286.110(3).

This narrow construction of NRS 286.110(3) is consistent with *Reno Newspapers, Inc. v. Haley*, where we concluded that although NRS 202.3662 unambiguously protects the applications for concealed firearms permits as confidential, the statute's scope of confidentiality must be narrowly construed and does not extend to protecting the identities of permittees or any post-permit records of investigation, suspension, or revocation.[4] 126 Nev. 211, 217, 234 P.3d 922, 926 (2010). Similarly, NRS 286.110(3) only protects as confidential the individuals' files held by PERS, not all information contained in separate media that also happens to be contained in individuals' files.

This is not to say, however, that information contained in separate media that is otherwise confidential, privileged, or protected by law may be disclosed. While we hold that NRS 286.110(3) protects only the individuals' files maintained by PERS, other statutes, rules, or caselaw may independently declare individuals' information confidential, privileged, or otherwise protected. The court in such an instance must review the requested information in camera to ensure that appropriate confidentiality is maintained. At this point, PERS has not identified any statute, rule, or caselaw that would foreclose production of the information requested by RGJ.

---

[3]Because we conclude that only the individuals' files are protected as confidential, we decline to address the parties' arguments with regard to NRS 286.117's waiver provision, as access to separately generated reports is not subject to NRS 286.117.

[4]In reaching our conclusion in *Haley*, we clarified that any confidential information within the unprotected post-permit files should be redacted pursuant to NRS 239.010(3). 126 Nev. at 219, 234 P.3d at 928. The same rationale applies here. However, we reiterate that information maintained in a medium separate from individuals' files is not made confidential merely because the same information can also be found in the individuals' files.

*Balancing of interests*

In the alternative, PERS argues that the district court erred in concluding that the government's interests in nondisclosure did not clearly outweigh the public's interests in access to the requested information. *See Donrey of Nev., Inc. v. Bradshaw*, 106 Nev. 630, 634-35, 798 P.2d 144, 147 (1990) (explaining that balancing the interests involved is necessary when evaluating whether certain reports must be disclosed). The government bears the burden of showing "that its interest in nondisclosure clearly outweighs the public's interest in access." *Gibbons*, 127 Nev. at 880, 266 P.3d at 628; *see also* NRS 239.0113(2). Further, the government's interests in nondisclosure are interpreted narrowly, whereas the public's interests in openness and accessibility are interpreted liberally. *Haley*, 126 Nev. at 217, 234 P.3d at 926.

PERS argues that disclosure of the requested information would subject retired employees to a higher risk of identity theft and elder abuse. RGJ asserts that such concerns are hypothetical and speculative and thus do not outweigh the presumption in favor of disclosure. The record indicates that the only evidence presented in the district court to support PERS's argument was a PowerPoint presentation with statistics showing that Nevada is the third leading state in the number of fraud complaints to the Federal Trade Commission and the sixth leading state in the number of identity theft complaints.

In Nevada, "[a] mere assertion of possible endangerment does not clearly outweigh the public interest in access to . . . records." *Haley*, 126 Nev. at 218, 234 P.3d at 927 (internal quotations omitted). Because PERS failed to present evidence to support its position that disclosure of the requested information would actually cause harm to retired employees or even increase the risk of harm, the record indicates that their concerns were merely hypothetical and speculative. Therefore, because the government's interests in nondisclosure in this instance do not clearly outweigh the public's presumed right to access, we conclude that the district court did not err in balancing the interests involved in favor of disclosure. *Id.*; *see also San Diego Cnty. Emps. Ret. Ass'n v. Superior Court*, 127 Cal. Rptr. 3d 479, 492-93 (Ct. App. 2011) (holding the potential for elder abuse and financial crime did not outweigh the public's interest in disclosure of pension information).

Accordingly, the district court correctly interpreted NRS 286.110(3)'s scope of confidentiality and did not abuse its discretion in ordering PERS to provide the requested information to the extent that it is maintained in a medium separate from individuals' files. We therefore affirm in part the district court's order granting the writ of mandamus.

However, to the extent that the district court ordered PERS to create new documents or customized reports by searching for and compiling information from individuals' files or other records, we vacate the district court's order. NRS 239.010(1) (permitting "inspection" and copying by the public); NRS 239.055(1) (permitting a government entity to charge an additional fee for extraordinary resources necessary to comply with "a request for a *copy* of a public record" (emphasis added)); *see also State ex rel. Kerner v. State Teachers Ret. Bd.*, 695 N.E.2d 256, 258 (Ohio 1998) (concluding Ohio public records laws impose "no duty to create a new document by searching for and compiling information from [a government agency's] existing records").

PICKERING, C.J., and GIBBONS, HARDESTY, DOUGLAS, CHERRY, and SAITTA, JJ., concur.