# IN THE SUPREME COURT OF THE STATE OF NEVADA

| LAS VEGAS REVIEW-JOURNAL,<br>Appellant,<br>vs.<br>CITY OF HENDERSON,<br>Respondent. | No. 73287 |

FILED

MAY 2 4 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING*

This is an appeal from a district court judgment denying a petition for a writ of mandamus and an application for injunctive and declaratory relief in a public records request matter. Eighth Judicial District Court, Clark County; Robert E. Estes, Judge.

Appellant Las Vegas Review-Journal (LVRJ) made a public records request to respondent City of Henderson pursuant to the Nevada Public Records Act (NPRA). Henderson performed a search that returned over 9,000 electronic files consisting of almost 70,000 pages of documents. Within five business days of the request, Henderson provided an initial response to LVRJ that the search generated a large universe of documents and that a review for privilege and confidentiality would be required before Henderson would provide LVRJ with copies. Henderson requested $5,787.89 in fees to conduct the privilege review and stated that a deposit of $2,893.94 (50% of the fee) would be due before the privilege review would begin.

LVRJ filed a petition for a writ of mandamus and an application for declaratory and injunctive relief, asking that Henderson be ordered to provide LVRJ access to the records without paying the privilege review fee. After LVRJ filed its petition, Henderson conducted the privilege review and

19-22730

permitted LVRJ to inspect the nonprivileged records on a Henderson computer free of charge while they litigated whether the NPRA permitted Henderson to charge LVRJ for the privilege review. Henderson also provided a privilege log to LVRJ. After the inspection and at the hearing on LVRJ's writ petition, Henderson agreed to provide copies of the records, except for the items listed in the privilege log, to LVRJ free of charge. The district court thereafter denied LVRJ's writ petition because Henderson provided the documents without charging for the privilege review. The district court also found the privilege log was timely provided and sufficient under the NPRA. This appeal by LVRJ followed. Reviewing the district court's decision to deny the writ petition for an abuse of discretion and questions of law de novo, *Reno Newspapers, Inc. v. Haley*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010), we affirm in part, reverse in part, and remand.

LVRJ argues that the district court erred in concluding that LVRJ's claims that Henderson's charging policy was impermissible are moot. We disagree. The issue of Henderson's fee became moot once Henderson provided the records to LVRJ free of charge because "a controversy must be present through all stages of the proceeding, and even though a case may present a live controversy at its beginning, subsequent events may render the case moot." *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010) (internal citations omitted). "[I]n exceptional situations," this court will decline to treat as moot an issue that is "capable of repetition, yet will evade review." *In re Guardianship of L.S. & H.S.*, 120 Nev. 157, 161, 87 P.3d 521, 524 (2004) (internal quotation omitted). This exception requires that the issue "evade review because of the nature of its timing." *Id.* The exception's application turns on whether the issue cannot be litigated before it becomes moot. *See, e.g., Globe*

*Newspaper Co. v. Superior Court*, 457 U.S. 596, 602-03 (1982) (explaining that an order excluding the public from attending a criminal rape trial during a victim's testimony that expired at the conclusion of the trial is capable of repetition, yet evading review); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546-47 (1976) (describing how an order prohibiting the press from broadcasting prejudicial confessions before trial that expires once the jury is empaneled is capable of repetition, yet evading review); *In re Guardianship*, 120 Nev. at 161-62, 87 P.3d at 524 (discussing types of issues that are both likely to expire prior to full litigation and are thus capable of repetition, yet evading review).

This is a fundamental requirement of the exception that LVRJ ignores. Indeed, so long as the records in a public records request are not produced, the controversy remains ongoing and can be litigated. In response to future public records requests, should Henderson maintain that it is entitled to an "extraordinary use" fee in the context of a privilege review, NRS 239.055, then the matter will be ripe for this court's consideration. Further, because NRS 239.011 already provides for expedited review of public records request denials, LVRJ's claim need not rely on such a rarely used exception. *See Personhood Nev.*, 126 Nev. at 603, 245 P.3d at 575 (observing that a statute expediting challenges to ballot initiatives generally provides for judicial review before a case becomes moot). Accordingly, we conclude that the district court did not err in concluding that LVRJ's claims regarding the ability to charge such fees and costs are moot.[1]

---

[1]Because LVRJ seeks declaratory and injunctive relief only as to issues rendered moot, we decline to consider whether LVRJ's request for

LVRJ also argues that Henderson failed to timely respond to its records request with a privilege log and thus waived its right to assert claims or privileges pursuant to NRS 239.0107(1)(d). Again, we disagree. "The ultimate goal of interpreting statutes is to effectuate the Legislature's intent." *In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 673, 310 P.3d 574, 578 (2013). The starting point for determining legislative intent is the statute's plain language. *Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983). If the language is clear and unambiguous, this court does not look beyond it. *Id.*

Under NRS 239.0107(1), a governmental entity must do one of four things within five business days of receiving a public records request; as pertinent here, a governmental entity must provide notice that it will be unable to make the record available by the end of the fifth business day and provide "[a] date and time after which the public book or record will be available" to inspect or copy, NRS 239.0107(1)(c), *or* provide notice that it must deny the request because the record, or a part of the record, is confidential, and provide "[a] citation to the specific statute or other legal authority that makes the public book or record, or a part thereof, confidential," NRS 239.0107(1)(d).

We conclude that Henderson's initial response complied with the plain language of NRS 239.0107(1)(c) because it gave notice within five business days that it would be unable to produce the records by the fifth business day as it needed to conduct a privilege review, demanded the fee amount, and gave a date the request would be completed once a deposit was received. Henderson estimated that the records would be available three

declaratory and injunctive relief exceeds the scope of permissible relief under NRS 239.011.

weeks after LVRJ paid the amount required to commence the review, which gave LVRJ a specific date upon which they could rely to follow up pursuant to NRS 239.0107(1)(c). Further, it would be implausible to provide a privilege log for such requests that capture a large number of documents within five business days. Moreover, NRS 239.0107(1)(d) is not relevant because Henderson did not deny LVRJ's request; rather, it stated that it needed more time to determine which portions of LVRJ's request it might need to deny in the future. Put simply, a governmental entity cannot tell a requestor what is privileged, and thus what records will be denied pursuant to NRS 239.0107(1)(d), until it has had time to conduct the review. NRS 239.0107(1)(c) provides the notice mechanism when the governmental entity needs more time to act in response to the request.[2] Accordingly, we conclude the district court did not err in finding that the privilege log was not untimely; Henderson did not waive its right to assert privileges in the records LVRJ requested by not providing a completed privilege log within five business days of LVRJ's request.

Finally, LVRJ argues that Henderson's privilege log was insufficient and noncompliant with the NPRA. More concretely, LVRJ argues that the factual descriptions and legal bases for redaction or withholding in the privilege log were too vague and boilerplate to determine if the attorney-client, work-product, and deliberative process privileges actually applied to the records in question. Additionally, LVRJ argues that some of the factual descriptions provided fall outside of the privilege asserted for that record.

---

[2]Further, to the extent LVRJ asserts waiver is the appropriate remedy for noncompliance with the statute, we need not reach that issue because we conclude Henderson complied with NRS 239.0107(1)(c).

The starting point for NPRA requests is that "all public books and public records of governmental entities must remain open to the public, unless otherwise declared by law to be confidential." *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 877, 880, 266 P.3d 623, 626, 628 (2011) (internal quotation marks omitted). Any limitations or restrictions on the public's right of access must be construed narrowly. *Id.* at 878, 266 P.3d at 626. In light of this mandate, when a governmental entity withholds or redacts a requested record because it is confidential, the governmental entity "bears the burden of proving, by a preponderance of the evidence, that the records are confidential." *Id.* (discussing NRS 239.0113). This court has opined that for the governmental entity to overcome its burden, "[t]he state entity may either show that a statutory provision declares the record confidential, or, in the absence of such a provision, 'that its interest in nondisclosure clearly outweighs the public's interest in access.'" *Pub. Emps.' Ret. Sys. of Nev. v. Reno Newspapers, Inc. (PERS)*, 129 Nev. 833, 837, 313 P.3d 221, 224 (2013) (quoting *Gibbons*, 127 Nev. at 880, 266 P.3d at 628). In *Gibbons*, we held that a privilege log is usually how the governmental entity makes a showing that records should not be disclosed because they are confidential. 127 Nev. at 882-83, 266 P.3d at 629. While we declined to "spell out an exhaustive list of what such a log must contain or the precise form that this log must take," "in most cases, in order to preserve a fair adversarial environment, this log should contain, at a minimum, a general factual description of each record withheld and a specific explanation for nondisclosure." *Id.* at 883, 266 P.3d at 629. We additionally cautioned that "in this log, the state entity withholding the records need not specify its objections in such detail as to compromise the secrecy of the information." *Id.* at 883 n.3, 266 P.3d at 629 n.3 (internal quotation omitted).

SUPREME COURT
OF
NEVADA


(O) 1947A

As the attorney-client privilege protects certain records by statute, see NRS 49.095, the district court was not obligated to conduct a balancing test for those records withheld or redacted pursuant that privilege.[3] See PERS, 129 Nev. at 837, 313 P.3d at 224; see also NRS 239.010(1). Instead, the district court was merely obligated to determine whether Henderson established that NRS 49.095 "declares the [withheld or redacted] record[s] confidential." PERS, 129 Nev. at 837, 313 P.3d at 224. Below, the district court found that Henderson met this burden. The district court determined that the privilege log followed the guidelines articulated in Gibbons, and these guidelines are generally sufficient for the governmental entity to meet its burden in proving confidentiality. 127 Nev. at 883, 266 P.3d at 629. A review of the privilege log shows that Henderson considered individually each document withheld or redacted, described each in turn, and provided that the attorney-client privilege and the work-product privilege was its basis for withholding or redacting that document. As we cautioned in Gibbons, "in this log, the state entity withholding the records need not specify its objections in such detail as to compromise the secrecy of the information." 127 Nev. at 883 n.3, 266 P.3d at 629 n.3 (internal quotation omitted). With this in mind, we disagree with LVRJ's argument that Henderson's proffered descriptions are overly conclusory. Accordingly, we conclude that the district court did not abuse its discretion in finding that these factual descriptions and explanations were sufficient

---

[3]Henderson organized its privilege log by grouping the attorney-client privilege and work-product privilege as one classification. Because LVRJ does not argue that the work-product privilege should be considered separately from attorney-client privilege or contest the designation as to any specific instances, we do not separate the two.

under *Gibbons* with respect to those documents withheld or redacted pursuant to the attorney-client privilege and work-product privilege.

However, we agree with LVRJ's argument in relation to those documents withheld or redacted pursuant to the deliberative process privilege. In Nevada, the deliberative process privilege is not statute based; instead, it is a creature of common law. *See DR Partners v. Bd. of Cty. Comm'rs of Clark Cty.*, 116 Nev. 616, 622, 6 P.3d 465, 469 (2000). Therefore, the district court was required to consider whether Henderson proved by a preponderance of the evidence "that its interest in nondisclosure clearly outweighs the public's interest in access." *PERS*, 129 Nev. at 837, 313 P.3d at 224 (internal quotation omitted). Below, the district court did not make this consideration, or consider the difference between documents redacted or withheld pursuant to the statute-based attorney-client privilege and those redacted or withheld pursuant to the common-law-based deliberative process privilege. Accordingly, we conclude that the district court abused its discretion in failing to consider the balancing test for these documents, and we reverse and remand for the district court to do so. Therefore, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver


cc:    Chief Judge, The Eighth Judicial District Court
       Hon. Robert E. Estes, Senior Judge
       Jay Young, Settlement Judge
       McLetchie Shell LLC
       Henderson City Attorney
       Bailey Kennedy
       Eighth District Court Clerk